**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RUTH ORTIZ, *individually, and on behalf of all others similarly situated,*<br><br>*Plaintiff,*<br><br>v.<br><br>LEXISNEXIS RISK SOLUTIONS INC.,<br><br>*Defendant.* | Civil Case No. 2:26-cv-8974<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## I. PRELIMINARY STATEMENT

1. Plaintiff Ruth Ortiz brings this lawsuit on behalf of herself and others similarly situated because of Defendant's violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x.

2. Defendant, a consumer reporting agency ("CRA"), maintains a database of information primarily concerning insurance policy and loss information as well as personally identifying information ("PII"). Defendant uses this information to sell consumer reports to insurers and other companies for insurance eligibility, underwriting and other purposes.

3. At issue in this litigation is Defendant's failure to comply with the FCRA, which contains multiple provisions protecting the privacy of a consumer's highly sensitive and personal information.

4. Defendant ignored its clear and unequivocal legal obligations to ensure that it only sells consumer reports to users with a permissible purpose, that it sells reports about the correct consumer, that reports are accurate to the maximum extent possible, and that it discloses information to consumers that is transparent, including about the end-users of the consumer report that Defendant sold about them. Defendant complied with none of these statutory mandates.

5. As a consequence of Defendant's failures, Plaintiff and others have had their statutory rights to privacy, accuracy, and transparency violated. Defendant's common course of conduct and legal violations entitle Plaintiff and those she seeks to represent to statutory damages, actual damages, punitive damages, and attorneys' fees and costs under the FCRA.

## II. JURISDICTION & VENUE

6. Jurisdiction of this Court arises under 15 U.S.C. § 1681p and 28 U.S.C. § 1331.

7. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in this District, Plaintiff resides here, and Defendant prepared and sold consumer reports about her while she lived here.

## III. THE PARTIES

8. Plaintiff Ruth Ortiz is a natural person and resident of Philadelphia, Pennsylvania.

9. Defendant LexisNexis Risk Solutions Inc. is a Georgia corporation that regularly conducts business throughout the United States, including within the Commonwealth of Pennsylvania and within this District, and maintains its principal place of business in Alpharetta, Georgia.

## IV. FACTUAL ALLEGATIONS

### Applicable Legal Framework

10. Beginning in 1968, the U.S. Congress enacted a web of laws and regulations known as the Consumer Credit Protection Act ("CCPA"), aimed at protecting the interests of consumers in the credit marketplace.[1] 15 U.S.C. ch. 41.

[1] The CCPA is now better known by its subparts, which include the Truth in Lending Act (CCPA Title I, 15 U.S.C. §§ 1601-1667f), the Fair Debt Collection Practices Act (CCPA Title VIII, 15 U.S.C. §§ 1692-1692p), the Equal Credit Opportunity Act (CCPA Title VII, 15 U.S.C. §§ 1691-1691f), and the Fair Credit Reporting Act (CCPA Title VI, 15 U.S.C. §§ 1681-1681x).

11. The CCPA included the FCRA, which "Congress enacted . . . in 1970 to ensure fair and accurate . . . reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) (citing 15 U.S.C. § 1681).

12. This case concerns three central consumer protections incorporated into the FCRA: privacy, transparency, and accuracy.

13. *First*, the protection of consumer privacy is a "major purpose" of the FCRA. *Trans Union Corp. v. F.T.C.*, 81 F.3d 228, 234 (D.C. Cir. 1996). One problem that Congress recognized and sought to remedy through the FCRA was that "information in a person's [consumer] file [was] not always kept strictly confidential." S. Rep. No. 91-517, at 4 (1969). Thus, the FCRA was enacted to "prevent an undue invasion of the individual's right of privacy in the collection and dissemination of [consumer] information." *Id* at 1.

14. Through FCRA sections 1681b and 1681e, 15 U.S.C. § 1681b(a) and § 1681e(a), Congress sought to promote this privacy right by permitting the sale of a consumer report only under enumerated circumstances—*i.e.,* only when the inquiring company has a permissible purpose. *See In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 639 (3d Cir. 2017) ("[W]ith the passage of FCRA, Congress established that the unauthorized dissemination of personal information by a credit reporting agency causes an injury in and of itself").

15. *Second*, transparency is an imperative of the FCRA so that consumers can know who is selling information about them, who the buyers of that information are, for what purpose the information is sold, and further so that consumers may understand the terms on which they have been offered credit or insurance, and the reasons for any denial(s) they experience.

16. Through the FCRA, Congress focused on ensuring that consumers have access to the detailed and highly sensitive information that financial institutions rely on in their decision making—including the initial question of *who* is doing the decision making.

17. To ensure a consumer can know which person or business obtained their confidential consumer information, when, and for what purpose, the FCRA obligates CRAs to disclose the identification of each person, "including each end-user" that "procured a consumer report" about the consumer. 15 U.S.C. § 1681g(a)(3)(A).

18. *Third*, accuracy in consumer reporting has long been recognized as a central consumer protection afforded by the FCRA.

19. One of the FCRA's most important requirements is that, "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

20. The inclusion of complete and accurate information in consumer reports is important because even small errors can disproportionately influence the cost of certain services, such as insurance.

**Defendant's Business Practices**

21. Defendant obtains information about millions of consumers, including social security numbers and dates of birth and other sensitive PII, from insurance companies, other consumer reporting agencies, courts, furnishers, users and others, and stores it in massive databases and/or warehouses.

22. Upon request from its customers, Defendant prepares "consumer reports" as defined by 15 U.S.C. § 1681a(d), about consumers like Plaintiff, with the information stored in its data warehouses, computer systems and/or databases.

23. Defendant prepares consumer reports by the millions per year for a fee and not gratuitously.

24. Defendant uses standardized policies and procedures, and automated processes including algorithms, modeling, and machine learning to prepare and sell these consumer reports. *See, e.g.,* LexisNexis Risk Solutions, *Our Technology*, https://lexisnexisrisk.com/en-us/our-technology (last visited Nov. 24, 2026).

25. Defendant anticipates or should anticipate that its customers will use its consumer reports to assess consumers' eligibility for credit and/or insurance, and its customers do, in fact, use its consumer reports for such purposes and other permissible purposes under the FCRA and/or other purposes.

26. Accordingly, Defendant's reports are "consumer reports" as defined by the FCRA. 15 U.S.C. § 1681a(d)(1)(A).

27. As such, Defendant is a "consumer reporting agency" or "CRA" as defined by the FCRA. 15 U.S.C. §§ 1681a(f), 1681b(a)(3)(C).

28. As a CRA, Defendant must maintain strict privacy of the sensitive PII and other consumer information it collects and maintains. Defendant is permitted to sell this information only for one of the enumerated "permissible purposes" set forth in FCRA section 1681b(a) (a CRA must may furnish a consumer report under the following circumstances *and no other.*" 15 U.S.C. § 1681b(a) (emphasis added).

29. Before any sale of a consumer report, Defendant must have a certification from the user and reasonable procedures designed to limit the furnishing of consumer reports to the purposes listed under FCRA section 1681b. 15 U.S.C. § 1681e(a).

30. Furthermore, any consumer report Defendant sells must be accurate, and it must contain only "information concerning the individual about whom the report relates," not about any other another individual or individuals.

**Plaintiff Ruth Ortiz's Experience**

31. At all relevant times, Plaintiff was a "consumer." 15 U.S.C. § 1681a(c).

32. Like any consumer, Plaintiff Ortiz has a right under the FCRA to see all information in her file. 15 U.S.C. § 1681g.

33. Plaintiff requested from Defendant and received on June 11, 2026, all information in her file in a lengthy document that Defendant calls a LexisNexis Consumer Disclosure Report ("LNCDR").

34. The LNCDR was 44 pages in length and contained vast amounts of information, from PII records to courts records, marketing records, insurance records and other information.

35. Some of the information related to Plaintiff, but other information within Plaintiff's LNCDR file appeared to relate to a different person or persons.

36. For example, the LNCDR contains surnames, street addresses and email addresses that do not relate or belong to Plaintiff.

37. Plaintiff's file appears to have been mixed with a file or parts of a file of another person or persons by Defendant.

38. Defendant bears the responsibility for linking particular records to particular consumers, and when this process is flawed, it comes to Defendant's attention in the form of mixed files, consumer disputes, and lawsuits.

39. Nevertheless, the FCRA is clear in section 1681e(b) that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates," not some other individual or individuals. 15 U.S.C. § 1681e(b).

40. Plainly, a consumer report cannot "relate" to a different person or persons under the FCRA.

41. Plaintiff's file, and therefore the consumer reports generated from the information within her file, clearly contains and/or has contained information related to an "individual" other than the one about whom the report relates.

42. Pursuant to FCRA section 1681g, Defendant maintained and disclosed within the LNCDR the identification and purported permissible purpose of every entity that purchased a consumer report about Plaintiff from Defendant for a two-year period preceding the date of the LNCDR.

43. In a section of the LNCDR labeled "Inquiry Records," Defendant's file on Plaintiff shows that in the previous two years Defendant sold consumer reports about Plaintiff on at least 38 different occasions – to Upgrade, Inc., Marlette Funding, Prosper Marketplace, TransWorld Systems, Inc., and 34 reports on different occasions between June 2025 and May 2026 to Credit Karma, LLC ("Credit Karma")

44. All 38 of these sales of Defendant's consumer reports were ostensibly about Plaintiff.

45. Plaintiff, however, has not done business with any of these companies, nor has she given them written consent, or any consent, for any of them to obtain her consumer information from Defendant.

46. Defendant's LNCDR states that the 34 Credit Karma reports and several others it sold were a based on Plaintiff's "written consent" and purportedly for the purpose of "prequalification."

47. Plaintiff has provided no written consent for these inquiries and has, no her knowledge, received no firm offers of credit or insurance from any of these companies.

48. On information and belief, Defendant possesses no written consent from Plaintiff about any of these sales of consumer reports about her.

49. Defendant's LNCDR states that the TransWorld Systems, Inc. report was for "collections" purposes, but Plaintiff has no collection account or any other account with TransWorld Systems, Inc.

50. Furthermore, other than a specific savings-account related program called Credit Builder, Credit Karma is not an institution that itself extends credit or insurance. *See* Credit Karma, *How It Works*, https://www.creditkarma.com/about/howitworks (last visited Nov. 24, 2026) ("We look at your credit profile and check for credit card, loan and insurance offers that could save you money.").

51. On information and belief, Credit Karma procured consumer reports from Defendant about Plaintiff for the use and benefit of other businesses (end-users) so those end-users could make offers of credit or insurance purportedly to Plaintiff.

52. On information and belief, Credit Karma disclosed to Defendant the identity of each end-user and each permissible purpose for which Plaintiff's information was obtained.

53. Nevertheless, Defendant's file disclosure/LNCDR to Plaintiff did not disclose the end-users of the information obtained, despite the explicit requirements of FCRA section 1681g(a)(3)(A).

54. Alternatively, Credit Karma failed to disclose to Defendant the identity of each end-user and each permissible purpose for which Plaintiff's information was obtained, and Defendant failed to request or require such end-user information or have reasonable procedures designed to limit such sales in a manner consistent with FCRA sections 1681b and 1681g.

55. Without the identity of the end-users, Plaintiff has no way of knowing whether her information was used to make her an actual and "firm" offer of credit or insurance, or whether her information was used or misused for other unlawful purposes.

56. Alternatively, if any of these end-end users were interested in making a firm offer to Plaintiff, Defendant's improperly linked information and/or mixed file on Plaintiff provided inaccurate information about Plaintiff to them. Because Defendant failed to disclose them and it is unknown who they were, it cannot be known at this time whether any inaccurate information provided by Defendant to any end-user limited or reduced any offer of prequalification that Plaintiff ultimately would have been eligible for.

57. These 38 consumer report sales about Plaintiff were not unique or individualized. Rather, they were permitted in an automated fashion by Defendant according to pre-programmed computer systems and algorithms which process such "inquiries" and sales.

58. Moreover, Credit Karma has "over 140 million members[.]" Credit Karma, *About*, https://www.creditkarma.com/about (last visited Nov. 24, 2026).

59. On information and belief, Credit Karma obtains consumer reports from Defendant about these members for the benefit of other businesses (end-users) so those end-users can make offers of credit or insurance to Credit Karma's over 140 million members.

60. Upon information and belief, Defendant routinely sells consumer reports to Credit Karma without disclosing the end-users to the affected consumers in the LNCDRs.

61. As a direct and proximate result of Defendant's above-alleged conduct, Plaintiff suffered harm, including the invasion of her right to privacy and the deprivation of information—the identity of the end-users who obtained her consumer information—to which she is entitled to by law.

62. At all relevant times, Defendant acted through its duly authorized agents and/or employees with respect to the above-alleged conduct.

63. At all relevant times, Defendant willfully or negligently violated the requirements of the FCRA with respect to Plaintiff and members of the class(es) she seeks to represent.

## V. CLASS ALLEGATIONS

64. Plaintiff asserts that this matter is suitable for class action treatment.

65. Plaintiff reserves the right to tailor any proposed class or classes based upon developments in discovery or as otherwise appropriate and permitted and will propose a specific class definition in connection with her anticipated motion for class certification as permitted by FED. R. CIV. P. 23.

66. **Numerosity.** The members of the class or classes are so numerous that joinder of all is impracticable. Upon information and belief, the number of consumers harmed by Defendant's practices is so numerous that joinder would be impracticable, and the names and addresses of

members of the class or classes are identifiable through documents or other information maintained by Defendant.

67. **Commonality and Predominance.** Common questions of law and fact exist as to all members of the class or classes and predominate over the questions affecting only individuals. These include, without limitation, whether Defendant properly discloses end-users of consumer file information; whether Defendant maintains reasonable procedures designed to prevent the sale of consumer reports as limited by the FCRA; whether Defendant maintains reasonable procedures to avoid faulty links between particular records and particular consumers; whether Defendant sold consumer reports to inquiring companies without a permissible purpose; whether the above common conduct was negligent, willful, or reckless; and whether members of the class or classes are entitled to statutory, actual, and/or punitive damages, and in what amounts.

68. **Typicality**. Plaintiff's claims are typical of the claims of each member of the class or classes. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of the class members and rest on the same legal theories.

69. **Adequacy**. Plaintiff is an adequate representative of the class or classes because her interests are aligned with, and are not antagonistic to, the interests of the members of the class or classes she seeks to represent. Plaintiff has retained counsel competent and experienced in such litigation and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of members of the class or classes.

70. **Superiority.** A class action is superior to other available methods for fair and efficient adjudication of the controversy. The damages sought by each member of the class or classes are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually

impossible for the members of the class or classes to individually redress effectively the wrongs done to them. Even if the members of the class or classes themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proofs in a unified proceeding.

## VI. CLAIMS FOR RELIEF

### COUNT ONE

On Behalf of Plaintiff and members of the class or classes
for Defendant's Violation of 15 U.S.C. § 1681b

71. Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

72. Section 1681b provides that any consumer reporting agency may furnish a consumer report "under the following circumstances and no other," including "[i]n accordance with the written instructions of the consumer to whom it relates." 15 U.S.C. § 1681b(a) and § 1681b(a)(2).

73. In order for Defendant to sell any consumer report, it must have "reason to believe [that the buyer] intends to use the information in connection with a credit transaction *involving the consumer on whom the information is to be furnished* and involving the extension of credit to, or review or collection of an account of, *the consumer*." 15 U.S.C. § 1681b(a)(3) (emphasis added).

74. Plaintiff's LNCDR contains dozens of inquiry records: for almost every inquiry, the stated permissible purpose is "Written Consent – Prequalification." For one, it is "Collections."

75. But Plaintiff did not give her written consent, and the reports Defendant sold about Plaintiff were not in connection with a credit transaction *involving the consumer on whom the information is to be furnished*, namely Plaintiff.

76. Defendant sold consumer reports about Plaintiff and others similarly situated in an automated fashion using systemic and fixed practices according to standardized policies and procedures.

77. When Defendant prepared consumer reports for its customers about Plaintiff and class members, including Credit Karma's 140 million members, Defendant negligently or willfully sold their consumer information even though the inquiring company did not have a permissible purpose to obtain their information, there was no written authorization, and the reports were not in connection to a credit or insurance transaction involving the consumer whose file information was sold to a third party, in violation of 15 U.S.C. § 1681b(a).

78. Defendant is liable to Plaintiff and members of the class(es) for all relief available pursuant to FCRA sections 1681n and 1681o.

## COUNT TWO

On Behalf of Plaintiff and members of the class or classes
for Defendant's Violation of 15 U.S.C. § 1681e(a)

79. Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

80. When preparing the consumer reports sold to inquiring companies, discussed *supra* in Count One, including those of Plaintiff and members of the class or classes, Defendant lacked and continues to lack any reasonable procedures designed to avoid violations of 15 U.S.C. § 1681b.

81. Defendant is liable to Plaintiff and members of the class(es) for all relief available pursuant to FCRA sections 1681n and 1681o.

**COUNT THREE**

On Behalf of Plaintiff and members of the class or classes
for Defendant's Violation of 15 U.S.C. § 1681g(a)(3)

82. Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

83. FCRA section 1681g(a)(3) provides that, upon a consumer's request, every CRA is required to disclose the identification of each person, including each end-user, that procured a consumer report about the consumer within at least the preceding one-year period (for non-employment procurements). 15 U.S.C. § 1681(g)(3)(A).

84. When Defendant made disclosures to Plaintiff and class members upon request, including to consumers comprising Credit Karma's 140 million members, Defendant negligently or willfully failed to include or to disclose the end-users of information it sold about those consumers.

85. Defendant is liable to Plaintiff and members of the class(es) for all relief available pursuant to FCRA sections 1681n and 1681o.

**COUNT FOUR**

On Behalf of Plaintiff and members of the class or classes
for Defendant's Violation of 15 U.S.C. § 1681e(b)

86. Plaintiff incorporates the foregoing paragraphs as though set forth at length herein.

87. Alternatively, if Defendant had a permissible purpose when it prepared reports about Plaintiff and/or class members for its customers, Defendant negligently or willfully included inaccurate information in the report because the report contained information relating to another person.

88. FCRA section 1681e(b) provides: "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible

accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

89. When preparing these consumer reports, including those of Plaintiff and/or members of the class, Defendant has lacked, and continues to lack, any reasonable procedures to assure the maximum possible accuracy of the information it included in the reports, in violation of FCRA section 1681e(b).

90. Defendant is liable to Plaintiff and members of the class(es) for all relief available pursuant to FCRA sections 1681n and 1681o.

## VII. JURY TRIAL DEMAND

91. Plaintiff demands trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays this Honorable Court grant her and members of the class(es) the following relief:

A. certifying the proposed class(es) and appointing Plaintiff and her counsel to represent them;

B. awarding actual damages;

C. awarding statutory damages;

D. awarding punitive and exemplary damages;

E. awarding reasonable attorney's fees and costs pursuant to 15 U.S.C. §§ 1681n and/or 1681o; and

F. awarding such other and further relief as may be necessary, just, and proper.

Dated: November 24, 2026

Respectfully,

RUTH ORTIZ, *individually, and on behalf of all others similarly situated,*

By: *<u>/s/ John Soumilas</u>*

John Soumilas
James A. Francis
Ethan F. Siegel
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
(215) 735-8600
jsoumilas@consumerlawfirm.com
jfrancis@ consumerlawfirm.com
esiegel@consumerlawfirm.com
*Attorneys for Plaintiff and the Proposed Class or Classes*